# IN THE COURT OF APPEALS OF IOWA

No. 20-0227
Filed January 21, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**FABIAN IVAN GARCIA,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Clay County, Charles Borth, Judge.

Fabian Garcia appeals his convictions for sexual abuse in the second degree, lascivious acts with a child, and incest. **AFFIRMED.**

Michael H. Johnson of Johnson Law Firm, Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Fabian Garcia appeals his convictions for sexual abuse in the second degree, lascivious acts with a child, and incest. He argues the district court erred in admitting a recording of the child's forensic interview, the evidence is insufficient to support his convictions, and the court abused its discretion in denying his request for an in camera review of the child's mental-health records. We reject his arguments and affirm.

## I.        Background Facts and Proceedings.

On December 31, 2017, Garcia lived with his paramour (the mother) and the couple's five children. The complaining witness was five years old at the time. The mother testified she and the children were in their bedrooms getting ready to sleep by 10:00 that night while Garcia remained in the living room drinking beer and playing video games. She later heard Garcia call the child into the living room to help him clean up. Eventually, Garcia and the child entered the mother's bedroom and wished her a happy birthday.[1] Later that night, the child reentered the bedroom by herself upset and crying, and she told the mother Garcia "was putting his fingers inside of her anus." The mother immediately confronted Garcia in the living room, and Garcia denied anything happened.

On January 1, the mother contacted police. The next day, the mother and child went to the Child Advocacy Center (CAC) in Sioux City for a physical examination and interview. The physical examination noted the child's genital and anal areas were "[n]ormal" with no signs of irritation or injury; however,

---

[1] The mother's birthday is January 1.

"[p]enetration and trauma may occur in the genital and rectal area without leaving definite physical signs due to the elasticity of the tissue in this area as well as the potential for rapid healing without scarring." During the interview, the child spontaneously said Garcia "pulled down his pants . . . he showed his private part, he put it, he put it in my butt and his finger, and then he licked his finger and then he put it on his private part. And, and then he put his private part in my butt." When asked what his "private part" looked like, the child pointed between her legs and said it was "like a boy." When asked about putting the "private part in [her] butt," the child laid down to show her position that night and said she "kept moving forward because it hurted." When asked "where did it hurted at?" the child pointed to her anus and said "he put it inside my . . . hole that, that poop comes out."

The State charged Garcia with sexual abuse in the second degree in violation of Iowa Code sections 709.1 and 709.3 (2017), lascivious acts with a child in violation of Iowa Code section 709.8, and incest in violation of Iowa Code section 726.2. The matter proceeded to a bench trial on November 6 and 7, 2019, after which the district court found Garcia guilty as charged. The court sentenced him to indeterminate terms of incarceration not to exceed twenty-five years for sexual abuse, ten years for lascivious acts with a child, and five years for incest, run concurrently. Garcia appeals.

## II. Standard of Review.

We review hearsay claims for errors at law. *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). A district court has no discretion to admit hearsay into evidence unless there is a provision providing for its admission. *State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020). Conversely, subject to relevance and Iowa Rule of

Evidence 5.403 considerations, a district court also has no discretion to exclude hearsay evidence if the statement falls within an enumerated exception. *Id.* This lack of discretion regarding admission or exclusion of hearsay is why rulings on hearsay are reviewed for the correction of legal error. *Id.*

We review insufficient-evidence claims for errors at law. *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004). "Substantial evidence exists to support a verdict when the record reveals evidence that a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Id.* "In making this determination, '[w]e view the evidence in the light most favorable to the verdict,' including all reasonable inferences that may be deduced from the record." *Id.* (alteration in original) (quoting *State v. Gay*, 526 N.W.2d 294, 295 (Iowa 1995)).

We review nonconstitutional challenges to discovery rulings for abuse of discretion. *State v. Leedom*, 938 N.W.2d 177, 187 (Iowa 2020).

### III.     Hearsay.

Garcia challenges the admission of the video recording of the CAC interview. Garcia asserts the video is inadmissible hearsay. The State acknowledges the video is hearsay but asserts the video is admissible under the residual exception. *See* Iowa R. Evid. 5.807; *see also* Iowa Code § 915.38(3). Under the residual exception, such a video is admissible if the State shows five elements: "trustworthiness, materiality, necessity, service of the interests of justice, and notice." *State v. Rojas*, 524 N.W.2d 659, 662–63 (Iowa 1994); *see also Veverka*, 938 N.W.2d at 200.

Garcia concedes the video is material if true and the State provided proper notice. He challenges the trustworthiness, necessity, and interests-of-justice requirements.

As to trustworthiness, our supreme court has identified several indicia of trustworthiness that are present here. *See Rojas*, 524 N.W.2d at 663. By watching the interview on video, "the trier of fact could observe for itself how the questions were asked, what the declarant said, and the declarant's demeanor." *Id.* The interview occurred less than forty-eight hours after the events at issue when the child's memory would still be fresh, much fresher than at the trial almost two years after the events. The interview was open-ended and non-leading, with the interviewer adopting the child's terminology such as "private part" and "butt." The child's description of sexual contact was consistent throughout the interview and with other accounts in the record. This description was also detailed, with the child explaining how she squirmed forward in pain from penetration. Such a description is "beyond the experience of the average" five-year-old, especially considering the mother's testimony that the child has never viewed pornography or otherwise seen a sex act. *See id.* While Garcia raises several issues with the interview, we believe none of these issues are so serious as to undermine the trustworthiness of the interview. Therefore, we find the interview sufficiently trustworthy.

As to necessity, a hearsay statement sought to be admitted under the residual hearsay rule does not meet the requirement just because the State needs it. *See State v. Barnard*, No. 18-0757, 2019 WL 5792578, at *4 (Iowa Ct. App. Nov. 6, 2019). Rather, "the State must show the evidence is 'more probative . . . than any other evidence that the proponent can obtain through reasonable efforts.'"

*Veverka*, 938 N.W.2d at 204 (alteration in original) (quoting Iowa R. Evid. 5.807(a)(3)). Here, the lack of physical evidence and other witnesses meant the State relied almost entirely on the child's statements to prove a sex act occurred. *Cf. State v. Metz*, 636 N.W.2d 94, 100 (Iowa 2001) (finding hearsay statements of an unavailable witness were not necessary where "the State had available to it for use at trial the testimony of other witnesses who had actually heard statements made by the defendant"). At trial, the State offered the child as a witness, but the child testified she did not remember many details of December 31, 2017, including whether Garcia did anything that hurt her. After the child's testimony, the district court admitted the CAC interview. We agree the interview was sufficiently necessary at that point.

Finally, hearsay evidence serves the interests of justice if it meets the other requirements of residual hearsay and "advances the goal of truth-seeking expressed in Iowa Rule of Evidence" 5.102. *Rojas*, 524 N.W.2d at 665. Having found the State showed sufficient trustworthiness and necessity, we agree the interview also serves the interest of justice. *See State v. Neitzel*, 801 N.W.2d 612, 622–23 (Iowa Ct. App. 2011) (finding a child's hearsay statements about sexual abuse were admissible under the residual exception after the child could not remember the events at trial). We find no error in admitting the CAC interview under the residual hearsay exception.

### IV. Sufficiency of the Evidence.

Garcia argues the evidence is insufficient to prove he engaged in sexual activity with the child. *See* Iowa Code §§ 709.1 (defining sexual abuse to include performing a sex act with a specified person), 709.8 (defining lascivious acts with

a child to include specified sexual contact with a child), 726.2 (defining incest to include performing a sex act with a specified related person). Garcia raises several issues that he claims cast doubt on the child's credibility during the CAC interview. However, questions of credibility are for the factfinder. *See State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999) ("[I]t is for the [factfinder] to judge the credibility of the witnesses and weigh the evidence."). The district court found the child's description of Garcia engaging in sexual contact with her credible, and it found Garcia's testimony about that night not credible. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) (finding "the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt" of sexual abuse). We find the evidence sufficient to support Garcia's conviction on all three counts.

## V.     Mental-Health Records.

Garcia filed a motion for privileged records seven days before trial, seeking mental-health records from the child's therapist. Two days later, the district court denied Garcia's motion verbally during a hearing and confirmed the denial in a written order that followed. Garcia claims the district court erred in denying his motion.

Iowa Code section 622.10 controls "access to mental health records and generally prohibits disclosure of confidential communications between mental health professionals and their patients." *Leedom*, 938 N.W.2d at 186. To gain access to confidential records, a defendant must satisfy multiple conditions, including showing "a reasonable probability that the privileged records sought may likely contain exculpatory information that is not available from any other source." Iowa Code § 622.10(4)(a)(2)(b); *see also Leedom*, 938 N.W.2d at 187–88 (finding

the fact the therapist never reported the minor was sexually abused is sufficient to review therapy records); *State v. Neiderbach*, 837 NW.2d 180, 196–97 (Iowa 2013) (finding a witness's recent bizarre behaviors are sufficient to review the witness's mental-health records); *State v. Thompson*, 836 N.W.2d 470, 490–91 (Iowa 2013) (rejecting the defendant's request to review mental-health records because the defendant showed no "nexus between the issues at trial and the mental health treatment received by" the witness). If the defendant makes such a showing, "the court shall conduct an in camera review of such records to determine whether exculpatory information is contained in such records." Iowa Code § 622.10(4)(a)(2)(b). This process protects "the confidentiality of counseling records while also protecting the due process rights of defendants." *Leedom*, 938 N.W.2d at 186 (quoting *Thompson*, 836 N.W.2d at 481).

In denying Garcia's motion, the district court found the motion was not timely and the record contained "no evidence . . . whatsoever that" the requested records will contain exculpatory information unavailable from any other source. Even if we were to find the motion was timely, Garcia only advances "a rational, good faith" belief that the State sought to admit the CAC interview because the child provided exculpatory information "during the course of her counseling sessions."[2] When the State filed a motion to determine the admissibility of the CAC interview, it expected

---

[2] Garcia's appellate brief mentions the district court may have violated his constitutional rights to due process and a fair trial in denying a review of the records. The district court's order contains no indication the court considered or decided these constitutional claims. Therefore, to the extent Garcia raises constitutional claims on appeal, these claims are not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

the child to testify with "limited memory of any of the events establishing the basis for the allegations in this case." In an ensuing hearing on that and other matters, the State explained the child "may have difficulty testifying" based on the therapist's statement "that there may be some difficulties at trial." Nothing in the record establishes the child's difficulties were in any way related to information that would be exculpatory for Garcia. While our supreme court has encouraged "judges in close cases to examine the records in camera," this is not a close case. *See Leedom*, 938 N.W.2d at 188. Garcia has shown a generalized hope, rather than a reasonable probability, that the child's mental-health records will contain exculpatory information. He is "not entitled to go on a fishing expedition in [the witness's] mental health records." *Thompson*, 836 N.W.2d at 491. We find no abuse of discretion in the district court's denial of his motion for review of the child's mental-health records.

## VI. Conclusion.

We find the child's recorded interview is admissible under the residual hearsay exception, the child's testimony is sufficient evidence to support Garcia's conviction on all counts, and the court did not abuse its discretion in denying Garcia's request for review of the child's mental-health records. Therefore, we affirm.

**AFFIRMED.**